UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Gina Miceli | ) |
| | ) |
|           Plaintiff, | )   Case No.: 2:15-cv-1962-GMN-VCF |
| vs. | ) |
| | )   **ORDER** |
| Citigroup, Inc.; *et al.*, | ) |
| | ) |
|           Defendants. | ) |
| | ) |

Pending before the Court is the Motion to Dismiss, (ECF No. 15), filed by Defendants Citigroup, Inc. and Jeffrey Dunmire ("Defendants"). Plaintiff Gina Miceli ("Plaintiff") filed a response, (ECF No. 20), and Defendants replied, (ECF No. 24). For the reasons set forth herein, the Motion to Dismiss will be **GRANTED**.

**I.      BACKGROUND**

This case arises out of allegations that Defendant Citigroup, as Plaintiff's employer, discriminated against Plaintiff due to her age and gender. (Compl., ECF No. 1). Plaintiff began her employment in or around 1993 as a banking professional with California Federal Bank, which was acquired by Defendant Citigroup in 2003. (*Id.* ¶ 17); (Pl's Resp. 4:15-5:1, ECF No. 20). After the acquisition, Plaintiff worked for Defendant Citigroup as a branch manager until her termination on May 5, 2014. (Compl., ¶ 19). In her Complaint, Plaintiff argues that, despite Defendant Citigroup's claim that she was terminated due to an ethical violation, her termination actually resulted from the desire of Defendant Citigroup and Defendant Dunmire, Plaintiff's supervisor, to eliminate women and individuals over forty from the leadership of her branch. (*Id.* ¶¶ 53-54).

Based on these allegations, the Complaint sets forth claims for: (1) gender discrimination in violation of Title VII, (2) tortious discharge, (3) defamation, (4) intentional infliction of emotional distress, and (5) age discrimination in violation of the Age Discrimination in Employment Act of 1967. (*Id.* ¶¶ 63-126).

In the instant Motion, Defendants argue that the Court should dismiss this action based upon an arbitration policy detailed within Defendant Citigroup's employee handbook. Defendants claim that Plaintiff received a web link to Defendant Citigroup's Employee Handbook in December 2012 and electronically signed an acknowledgement receipt which set forth the general terms of the arbitration policy. (2013 U.S. Employee Handbook Acknowledgment Receipt, Ex. A-1 to Mot. to Dismiss, ECF No. 15). This acknowledgement receipt stated:

> When you click on the "I Acknowledge" button below, you are acknowledging that:
>
> You have opened the e-mail that directed you to this Web site.
>
> You have received the Web link to the Employee Handbook.
>
> You understand that it's your obligation to read the Handbook and become familiar with its terms.
>
> Appended to the Handbook is an Employment Arbitration Policy as well as the "Principles of Employment" that require you and Citi to submit employment-related disputes to binding arbitration (See Appendix A and Appendix D).  You understand that it is your obligation to read these document carefully, and that no provision in this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of your or Citi's right to compel arbitration of employment-related disputes.
>
> WITH THE EXCEPTION OF THE EMPLOYMENT ARBITRATION POLICY, YOU UNDERSTAND THAT NOTHING CONTAINED IN THIS HANDBOOK, NOR THE HANDBOOK ITSELF, IS CONSIDERED A CONTRACT OF EMPLOYMENT. IN ADDITION, NOTHING IN THIS

> HANDBOOK CONSTITUTES A GUARANTEE THAT YOUR EMPLOYMENT WILL CONTINUE FOR ANY SPECIFIED PERIOD OF TIME.  YOU UNDERSTAND THAT YOUR EMPLOYMENT WITH CITI IS AT-WILL, WHICH MEANS IT CAN BE TERMINATED BY YOU OR CITI AT ANY TIME, WITH OR WITHOUT NOTICE, FOR NO REASON OR ANY REASON NOT OTHERWISE PROHIBITED BY LAW.

(*Id.*).  Plaintiff does not dispute that the acknowledgement receipt bears her electronic signature and is dated December 5, 2012. (*Id.*).  The arbitration policy is fully detailed within Defendant Citigroup's 2013 employee handbook and provides, in relevant part:

> This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by statute are not subject to arbitration). . . .
>
> Neutral arbitrator(s) shall be appointed in the manner provided by AAA or FINRA rules, as applicable.  However, it's Citi's intent that arbitrators be diverse, experienced, and knowledgeable about employment-related claims. . . .
>
> Discovery requests shall be made pursuant to the rules of the AAA or FINRA, as applicable.  Upon request of a party, the arbitrator(s) may order further discovery consistent with the applicable rules and the expedited nature of arbitration. . . .
>
> The arbitrator(s) shall be governed by applicable federal, state, and/or local law.  The arbitrator(s) may award relief only on an individual basis.  The arbitrator(s) shall have the authority to award compensatory damages and injunctive relief to the extent permitted by applicable law.  The arbitrator(s) may award punitive or exemplary damages or attorneys' fees where expressly provided by applicable law.

(2013 U.S. Employee Handbook pp. 54-56, Ex. A-2 to Mot. to Dismiss, ECF No. 15).  Because of this arbitration policy, Defendants assert that this case should be dismissed pending arbitration, pursuant to the Federal Arbitration Act.

## II. LEGAL STANDARD

Section 2 of the Federal Arbitration Act (the "FAA") provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). Courts place arbitration agreements "upon the same footing as other contracts." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989).

Under the FAA, parties to an arbitration agreement may seek an order from the Court to compel arbitration. 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, the Court's "role under the [FAA] is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lee v. Intelius, Inc.*, 737 F.3d 1254, 1261 (9th Cir. 2013). If a district court decides that an arbitration agreement is valid and enforceable, then it should either stay or dismiss the claims subject to arbitration. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276-77 (9th Cir. 2006).

## III. DISCUSSION

In her Response, Plaintiff argues that the arbitration policy is unconscionable, and therefore invalid, because it was presented to Plaintiff nearly twenty years after she began her employment.

Nevada possesses a strong public policy in favor of arbitration, and arbitration clauses are generally enforceable. *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1168 (Nev. 2010). "Nevertheless, courts may invalidate unconscionable arbitration provisions." *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162 (Nev. 2004); *see also Burch v. Second Judicial Dist. Court of State ex rel. Washoe*, 49 P.3d 647, 650 (Nev. 2002).

"Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion to refuse to enforce a clause as unconscionable." *D.R. Horton*, 96 P.3d at 1162 (citing *Burch*, 49 P.3d at 650). Accordingly, in assessing Plaintiff's arguments regarding the invalidity of the arbitration policy, the Court will first determine whether the policy is procedurally unconscionable, and will then look to whether it is substantively unconscionable.

### A. Procedural Unconscionability

"An arbitration clause is procedurally unconscionable when a party has no meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract." *Gonski*, 245 P.3d at 1169. "Procedural unconscionability often involves the use of fine print or complicated, incomplete or misleading language that fails to inform a reasonable person of the contractual language's consequences." *D.R. Horton*, 96 P.3d at 1162. In this case, it is apparent that the arbitration policy is not procedurally unconscionable. Rather than being buried within Defendant Citigroup's employee handbook or presented in fine print, the general terms of the arbitration policy were made clear in the text of the one-page acknowledgement receipt signed by Plaintiff. This document states: "Appended to the Handbook is an Employment Arbitration Policy as well as the 'Principles of Employment' that require you and Citi to submit employment-related disputes to binding arbitration (See Appendix A and Appendix D)." (2013 U.S. Employee Handbook

Acknowledgment Receipt, Ex. A-1 to Mot. to Dismiss, ECF No. 15).  Notably, this statement also referenced the sections of the employee handbook containing the full text of the arbitration policy, "Appendix A and Appendix D," giving a clear indication as to where Plaintiff needed to look if she wanted to learn more.  Additionally, by signing this document, Plaintiff acknowledged that she was obligated "to read the Handbook and become familiar with its terms," (*id.*), which included the arbitration policy. *See* (2013 U.S. Employee Handbook pp. 53-56, Ex. A-2 to Mot. to Dismiss, ECF No. 15).  Therefore, the Court finds that the arbitration requirement was presented clearly and the terms of the arbitration policy were accessible to Plaintiff at the time she signed the acknowledgement receipt.

Plaintiff also argues that the arbitration policy is procedurally unconscionable because it was presented to her on a take-it-or-leave-it basis.  However, "[t]he Nevada Supreme Court has held that adhesion-contract analysis is inapplicable in the employment context." *Hillgen-Ruiz v. TLC Casino Enterprises, Inc.*, No. 2:14-cv-0437-APG-VCF, 2014 WL 5341676, at *6 (D. Nev. Oct. 20, 2014).  Indeed, in *Kindred v. Second Judicial Dist. Court ex rel. County of Washoe*, the Nevada Supreme Court stated: "An adhesion contract is a standardized contract form offered to consumers of goods and services essentially on a take it or leave it basis, without affording the consumer a realistic opportunity to bargain.  We have never applied the adhesion contract doctrine to employment cases." 996 P.2d 903, 907 (Nev. 2000).  Therefore, pursuant to the Nevada Supreme Court's holding in *Kindred*, Plaintiff's argument regarding the disparity in bargaining power between herself and Defendant Citigroup is unavailing.  Thus, the Court finds that Plaintiff has failed to demonstrate that the arbitration policy at issue is procedurally unconscionable.

### B. Substantive Unconscionability

"Substantive unconscionability . . . is based on the one-sidedness of the arbitration terms" and whether those terms are "oppressive." *D.R. Horton*, 96 P.3d at 1162-63.  In this

case, Plaintiff argues that the arbitration policy is substantively unconscionable because it could be interpreted to apply retroactively to the date she began her employment.  However, assuming *arguendo* that the policy would apply retroactively, it nevertheless imposes the arbitration requirement equally upon Defendant Citigroup and Plaintiff.  The policy states:

> This Policy applies to both you and to Citi, and makes arbitration the required and exclusive forum for the resolution of all employment-related disputes (other than disputes which by statute are not subject to arbitration) which are based on legally protected rights (i.e., statutory, regulatory, contractual, or common-law rights) and arise between you and Citi, its predecessors, successors and assigns, its current and former parents, subsidiaries, and affiliates, and its and their current and former officers, directors, employees, and agents.

(2013 U.S. Employee Handbook pp. 53-56, Ex. A-2 to Mot. to Dismiss, ECF No. 15). Therefore, even if the policy were construed to require that pre-existing claims be submitted to arbitration, this requirement would equally bind Defendant Citigroup and Plaintiff, and thus would not be substantively unconscionable.  Accordingly, the Court finds that Plaintiff has failed to show that the agreement at issue is either procedurally or substantively unconscionable, and Defendants' Motion will be granted.

Upon finding that a plaintiff's claims are subject to an arbitration clause, the Court may dismiss an action without prejudice instead of staying the action while the arbitration proceeds. *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988); *Stewart v. Dollar Loan Ctr.*, LLC, No. 2:13-cv-0182-JCM-PAL, 2013 WL 3491254, at *4 (D. Nev. July 10, 2013).  In this case, the Court finds that dismissal is warranted because all of Plaintiff's claims are subject to the arbitration policy.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 15), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Complaint is dismissed without prejudice because Plaintiff must first comply with the terms of the relevant arbitration agreement. The Clerk is instructed to enter judgment accordingly and close the case.

**DATED** this __13__ day of July, 2016.

_____
Gloria M. Navarro, Chief Judge
United States District Court